**IN THE COURT OF APPEALS OF IOWA**

No. 24-1966
Filed May 7, 2025

**IN THE INTEREST OF L.B.,**
**Minor Child,**

**A.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Boone County, Hans Becker, Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Chira L. Corwin of Corwin Law Firm, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Nathan D. Hostetter of Hostetter Law Office, Ames, attorney and guardian ad litem for minor child.


Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

The mother's child was removed from her custody ten days after his birth in 2023, when he tested positive for methamphetamine, amphetamines, and THC. More than one year later, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h) (2024). The mother appeals,[1] challenging the sufficiency of the evidence supporting that statutory ground. She also contests the juvenile court's finding that termination was in the child's best interests and its denial of additional time to work toward reunification. We review these claims de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

Termination of parental rights is governed by a three-step analysis under Iowa Code section 232.116. *Id.* Confining our review to the steps challenged by the mother, *see In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we first examine whether the State proved by clear and convincing evidence that the mother's rights should be terminated under section 232.116(1)(h). The mother contests only the fourth element of that ground—whether the child could be safely returned to her custody at the present time. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "present time" to mean "the time of the termination hearing"). The mother argues the "concerns regarding substance abuse, mental health and a safe living environment no longer exist" and that the child can be returned to her custody. We disagree.

The Iowa Department of Health and Human Services intervened with this family in January 2022 after receiving reports that the mother used illegal

---

[1] The juvenile court did not terminate the parental rights of the child's father.

substances around her older two children.[2]  While receiving services from the department in that case, the mother tested positive for methamphetamine—just three days before giving birth to the child at interest here.  The child tested positive too and showed some signs of "substance exposure/withdrawal," like tremors, irritability, and rapid breathing.  The child was removed from the mother's custody and later adjudicated as a child in need of assistance.

Soon after the child's birth, the mother entered an inpatient substance use program but left four days later without completing treatment.  For the next year, the mother did not do much to participate in services offered by the department.  Despite concerns about her mental health, she did not complete an evaluation or participate in therapy.  She also failed to complete a substance-use evaluation and was so inconsistent with her twice-weekly visits that they were reduced to one ninety-minute visit each week.  The visits were fully supervised and held in the community because the mother's home was not safe for the child due to mold and other issues.

The mother started to turn things around in May 2024.  She completed substance use and mental health evaluations and began treatment for both.  She also started consistently participating in visits, which went well.  The mother points to these positive steps and the negative urinalyses that she completed for her substance use counselor in May, June, and July as evidence that the child could be returned to her custody.  But the mother completed only one drug test for the department—out of a requested sixteen.  And that one test, a sweat patch in

_____

[2] The juvenile court terminated the mother's rights to her older two children in August 2023.  They are not involved in this appeal.

August 2024, was positive for methamphetamine and THC.[3] The mother insisted she was sober and blamed the positive test on having sexual intercourse with a man who used the drug. Yet she missed two drug tests requested by the department in October.

At the termination hearing in November, the department's case manager testified that the child could not be returned to the mother's custody because she had "just recently started to address concerns that have been going on for quite some time." The case manager was also not confident the mother was sober, given her positive drug test in August, the missed tests in October, and her past performance in this case and in her older children's case. *See In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000) ("The future can be gleaned from evidence of the parents' past performance and motivations."). The guardian ad litem agreed with the case manager, arguing that with the mother's history, "it's hard for me to feel like today or maybe even six months from now that we could return the child safely home because the most three recent screens are a dirty screen and two missed screens." *See In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App.

---

[3] The mother, who did not have a driver's license or vehicle, had to travel to a nearby town for the drug tests because there was no testing site where she lived. She now complains that she "had difficulty finding rides to the drug screen appointments because they are on such short notice." To the extent this is a challenge to the department's reasonable efforts, we find that it was waived because the mother did not alert the juvenile court to this issue before the termination hearing. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). In any event, the case manager testified that the mother had family and friends who gave her rides. One of those friends testified at the termination hearing that he was usually available if the mother needed transportation. The case manager also offered to drive the mother to some of the tests.

Apr. 1, 2020) ("We presume these missed drug tests would have resulted in positive tests.").

On top of these signs that the mother was still using methamphetamine, she never progressed beyond fully supervised visitation. In fact, her interactions with the child were reduced. We agree with the State that while those visits went well, "a fully supervised ninety-minute visit once a week is a far cry from being able to appropriately parent on a full-time basis." *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The mother] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the mother's care."). For all these reasons, we find clear and convincing evidence supported termination under section 232.116(1)(h).

Termination must also be in the child's best interests. *See* Iowa Code § 232.116(2). The mother contests that second step in our termination framework, arguing that there are no concerns about her parenting and she shares "a true bond" with the child.[4] While we recognize the mother's love for her child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* As noted, there are still concerns about the mother's ongoing substance use. Meanwhile, the child is bonded to his

---

[4] Even though the mother's best-interests argument mentions the bond she has with the child—which can be argued separately as a permissive exception under section 232.116(3)—we choose to analyze it under step two of our framework, as she does in her petition on appeal. *See In re L.A.*, ____ N.W.3d ____, ____, 2025 WL 855764, at *3 n.2 (Iowa Ct. App. 2025).

6

pre-adoptive foster family and has thrived in their care. *See id.* § 232.116(2)(b) (considering the child's integration into the foster family); *accord In re W.M.*, 957 N.W.2d 305, 314 (Iowa 2021). We agree with the juvenile court that the child "should not be forced to wait endlessly for his mother to resolve the reasons for [his] removal from her care." *See P.L.*, 778 N.W.2d at 41 ("It is well-settled law that we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

Finally, we reject the mother's argument that she likely would have achieved reunification with a six-month extension. Granting a parent more time is appropriate only if the record shows "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b); *see also id.* § 232.117(5). We agree with the juvenile court's reasons for denying the mother's request: "[Her] resistance to the services offered, her last-minute participation, the uncertainty of her continued sobriety and mental health status, the uncertainty of the mother's housing situation, all militate against a finding another six months would eliminate the need for the child's removal." *See In re B.S.*, No. 12-1609, 2012 WL 5534169, at *3 (Iowa Ct. App. Nov. 15, 2012) ("The parents' eleventh hour attempts to prevent termination by engaging in services do not overcome their years of addiction and instability.").

We affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**